Mr. Johnson. Thank you, Your Honor. Just before you begin, just a note. I mean, your confidentiality markings in your brief seem to be largely improperly marking stuff that you're claiming confidentiality description of your assertions in the case and the references to those. Would you go through the brief with a sharp pencil and assure both of you that the aspects for which you've requested confidentiality, there's a separate issue of what we discuss here, and that which you want to be sure doesn't end up in some written opinion that might disclose confidential information. Sure, Your Honor. Thank you. You ought to file a new brief that has proper confidentiality markings. Whatever's the most convenient way to resolve the question so that we can proceed with deciding the case. Certainly. Thank you. Okay. Let's proceed with the merits. Yeah, and I'm happy to be here today with two spectators from QuinTron Instrument Company, and they are Mr. Stephen Hamilton and Mr. Eric Hamilton. And together, they are the second and third generation of this family company, the first generation being Dr. Lyle Hamilton, whose evidence you see in the record there, Steve Hamilton being Dr. Lyle Hamilton's son, and Eric Hamilton being Steve's son. So Dr. Hamilton, in 1992, wrote a book, Breath Tests in Gastroenterology. Dr. Hamilton was a respiratory physiologist who studied in the human body the mechanism by which breath is expired. I thought the issue was attorney's fees. The issue is attorney's fees. I'm sorry. The strengths and weaknesses of this case are exemplified by Dr. Hamilton's work in 1992 and by Steve Hamilton's patent, the 776 patent that issued in 1995. The district court decided not to award attorney's fees. Why is that reversible error, given the standard review, which is deferential? Yes, and it is. And it is reversible because the district court failed to take into account the totality of the circumstances. The first aspect under the totality of the circumstances that the district court failed to take into account was the weakness of the Commonwealth's case. And the weakness of the Commonwealth's case is best exemplified by a few different examples. The first is its contributory infringement claim. And a claim for contributory infringement obviously requires that the accused device have no substantial non-infringing use. Well, what suggests that the district court didn't take that into account? You must have argued that. We did, and there's nothing in the opinion that addresses this very well. Well, why does he have to address every issue in the opinion? Well, under the totality of some circumstances analysis, it is to give weight to the total strength of the case and the total weakness of the case. But there's no indication that the district court didn't consider that issue, right? There's no indication that it considered it or didn't consider it. It failed to mention it in the opinion. So we reverse district courts for failure to mention stuff? No, you reverse district courts for a failure to recognize the weakness of the case and failure to recognize the sheer weakness of the contributory infringement claim, the direct infringement claim, and the inducement infringement claim. And none of which are recognized with the exception of the inducement claim is addressed in short. The reversal is because the totality of the circumstances here requires it. The accused devices, and this is something that I've never seen, the accused devices mentioned explicitly on the face of the patent, the accused patent. In 1987, Quintron sold the accused device to Commonwealth directly. Preceding the application date of the patent, Quintron sold the device to Cedars-Sinai. And the patent itself mentions that the accused device was used for its intended purpose, and that's to test for SIBO, small intestinal bacterial overgrowth. So these are circumstances that, frankly, I've never seen, and I don't see reported in the cases. I've never seen anything like this reported in the cases, and that's what sets this case apart from the mine run cases that Octane Fitness recognizes. So the material in the possession of Commonwealth prior to filing this case also dictates that this is an exceptional case, and it's reversible under the totality of the circumstances analysis that the district court should have engaged in. And the material in Commonwealth's possession, they had an accused device in their possession from 1987 until today's date, presumably, but certainly they had it in their possession during the pre-filing investigation stage of this analysis, indicated that, number one, they saw the 776 patent number on it from 1995, and yet they accused that breath-testing analysis kit of infringement, 1995, well before the filing date of the Cedars-Sinai patent in suit. And the machine back from 1987, they were using it from 87 until presumably today, but certainly they had it in their possession during the pre-filing investigation phase. These are unprecedented facts that indicate that this is an exceptional case that leaps outside of the mine run that Octane Fitness specifies as the standard here. And an additional factor that the district court failed to recognize was the settlement offer. The settlement offer and whether there can or cannot be a settlement offer and how that plays into the exceptional case analysis, we fully understand that. But the settlement offer in this particular case, in addition to being for what we think is a nuisance amount, and in addition to the explicit threat for there to be protracted litigation from Commonwealth against Quintron, in addition to that, the scope of the settlement agreement wasn't considered by the district court. It wasn't mentioned by the district court. I'm sorry. It wasn't mentioned by the district court. The scope of the... You said not considered. The district court didn't say it didn't consider it, right? Well, I didn't see a measurement of the scope of the proposed settlement agreement. And what we have here is Commonwealth's attempt to ensnare with the settlement agreement the devices that they themselves had possessed since 1987 because the scope of the settlement agreement asked for the royalties for the SIBO instrumentation, the gas chromatographs, and the breath testing kits, both of which predated the patent suit by five years in the case of Steve's breath testing kits and over a decade for Commonwealth's own possession of those machines. And that's the scope of what Commonwealth sought to license, to have a Quintron license from Commonwealth. They wanted to ensnare the prior art with their license, and we all know that that's impossible to do. So they tried, but we didn't. And in addition, the settlement agreement would have had Commonwealth assigned to... I'm sorry. The settlement agreement would have had Quintron assigned to Commonwealth all improvements in the gas chromatographs and in Steve's breath testing collection kits. The patent suit has nothing to do with that. The patent in suit is a method of diagnosing irritable bowel syndrome. That should give no rights to Commonwealth to seek from Quintron to have all of its improvements assigned to Commonwealth. And the other thing that the district court did address in short was the pre-filing investigation here. And Mr. Stein's testimony regarding the pre-filing investigation that he conducted, and Mr. Stein's billing records regarding the pre-filing investigation that he conducted. Now, Mr. Stein testified under oath that he had created a computer file before the case was filed. And our expert says that the claim construction chart in this case wasn't created until July of 2014, well after the filing date of this case, six months after, seven months after the filing date of this case. So you have untruths under oath, and you have... Well, the district court said in an early order that that was disturbing. Yes, it is. Let's see. Commonwealth's former counsel may have perjured himself is a specific quote from it. Yeah, and that is troubling. That just supports the exceptionality of this case. But what I'm saying is the court was aware of it. The court was aware of it, yes. And adding it all up, what you have here is a case that, under the octane fitness standard, is well outside of the norms of patent litigation. It presents itself a factual scenario which I've never seen. A device that Quintron has been producing for decades now, the gas chromatograph, is accused of infringement. Commonwealth had that from 1987 until... Yeah, but that doesn't mean there couldn't be an inducement claim, right? An inducement for infringing their method claim. Well, certainly there may be, but the inducement claim still requires that somebody had to have performed all of the method steps of the claim. Well, not now, yes. It also requires a mens rea element, which Commonwealth said that they had no idea was present or not present in this case. They still would have had to clear a pleading standard under ACMI. Under any version of ACMI, they would have had to clear a pleading standard. And that would not have been fatal to their case, because in addition to an inducement, they had the direct and contributory claims to fall back on. So just whatever ACMI held, it wouldn't have been fatal to their case one way or another because there are additional theories that it could have relied upon. So I'd like to save the remainder for my rebuttal, and I thank you very much. Okay. Thank you, counsel. Good morning, Your Honours. May it please the Court? I'll respond as concisely as possible. Mr. Edley, I'd like to know, because it is disturbing what the district court said about former counsel, that former counsel may have perjured himself. And in its blue brief at 52, just before it has that quote, Quintron asserts the importance of the claims chart and that it goes beyond dishonesty by counsel. Your opposing counsel just made that argument. Where in the red brief did you address that argument? Your Honour, I'll begin with the first part of your question. The district court does not resolve the issue of the question of former counsel's conduct in the order dismissing this case. But she did conduct an evidentiary hearing later. I know, I read it. At the end of that hearing, then you would know at the appendix at page 1557, she concluded after testimony of former counsel, after sworn statement from the office administrator, that no misconduct had occurred that warranted reporting. And so while it may not have been considered fully or resolved at the time of the order adopting the report and recommendation. No, no, no, no. I didn't ask you a two-part question. I asked you a one-part question. And the one-part question was, where did you address it in your red brief? Your Honour, I don't have the page numbers in front of me. I apologize. I believe it was addressed in our red brief, but I'm not aware of pages. Let me attempt to find it. Perhaps your associate can find it while you continue with your argument. I don't want to interrupt your flow any further than I already obviously have. Okay, but please continue with your arguments and perhaps your colleague will find it. I believe it's addressed at page 27. Excuse me, your Honour. I didn't intend to interrupt you. No. I believe it flows from 27 on to page 28. You're not understanding my question, then. Is it? No. Addressing the billing records? The question is, the argument that your opposing counsel made was that the importance of the claims chart transcends that alleged falsehood of the billing records. And that it shows that it hadn't been created until six months after the suit. And he made that argument again, an oral argument. And that's what I don't see in your red brief. Yes, you made the argument about the falsehood or non-falsehood. Yes, your Honour. I think what was uncontested below is that former counsel obtained samples of the accused devices. He reviewed Quintron's advertisements and public information on the website. He compared those materials to the claims of the 852 patent. He interviewed the inventor on at least three different occasions. He reviewed prior art references. He reviewed the prosecution history. All of that present in his deposition and uncontested. As this court held, I believe, in its Q Pharma case versus Andrew Juergens, which is cited in the briefs. I'll quote, a claim chart is not a requirement of a pre-filing infringement analysis. That's at page 1301 and 1303. And then on page 1302, the court said, and I'll quote, an infringement analysis can simply consist of a good faith informed comparison of the claims of a patent against the accused subject matter. So although there was a discrepancy in when the claims chart was prepared, in the view of Commonwealth, the proper pre-suit investigation had occurred pre-suit in the form of the other investigation conducted by counsel, even if, as Quintron alleges, that particular piece of evidence came later. I'm not conceding that. I'm simply acknowledging that concession. What Quintron is asking ultimately here is that this court find that the district court abused its discretion in ruling that this is not an exceptional case. And it asks you to do so where, before dismissal of the case, there had been no discovery, no discovery disputes, no claims construction, no finding of misconduct, no finding of frivolity, no finding of vexatious or harassing litigation conduct, no litigation history not on the part of Commonwealth either before or now after, no extending of the litigation to try to cause additional expense to be incurred. The complaint was served on Quintron. Quintron filed a motion to dismiss. Yeah, but the problem is the complaint does include a couple of claims, which at least one of which, the contributory infringement claim, seems to be frivolous on its face. Right? Your Honor, at the time the complaint was filed, I believe this court has held that divided infringement was- No, no, no. That's not the issue. How could there be contributory infringement by selling a device which was known in the prior art? Your Honor, I'll concede that the claim was not well conceived. I don't know what was in the mind of former counsel, potentially pleading in the alternative out of an abundance of caution, potentially a misapprehension of the law, but that claim was withdrawn very quickly, as were all of the claims. This isn't among the cases where someone pleads a frivolous claim or takes a frivolous position and then maintains it, notwithstanding rulings or being brought to the party's attention. Quintron filed its motion to dismiss. While the motion was pending, the Limelight-Akamai case came out on June 2nd. On June 3rd, Quintron filed a notice of supplemental authority in the court, and eight days later, the court had its scheduling conference, and in light of that Limelight opinion, recognized that there might be problems with the pleadings, granted the motion to dismiss, and granted leave to replete. And within the time to replete, Commonwealth withdrew the complaint and voluntarily dismissed. The fact that there might have been an ill-conceived claim or bad lawyering doesn't equate to misconduct. In fact, the court recognized that the withdrawal of the complaint seemed to indicate a good-faith intent to proceed with litigation under the law. The court also found that, or considered the other claims, and it concluded that Quintron's arguments that this case was meritless from its very outset, that those arguments rested on the premise that devices can't infringe a method claim. And as you'll recall, the court said, quote, mischaracterizes the plaintiff's infringement theory, which was never about the mere sale of devices. The theory was actually about the provision of a service, the performance of a process. Now, Quintron says, well, that is frivolous on its face because Quintron doesn't diagnose. And yet Quintron's own website states that these devices are used, quote, as a clinical medical diagnosis for people with irritable bowel syndrome. The court found that with that evidence, there was a colorable basis to bring a claim of infringement, direct infringement, against Quintron. Quintron argued that the induced infringement claim had to be frivolous because Commonwealth couldn't point to one single infringer. And yet, as you alluded to earlier, Judge Dyke, no single direct infringer was required at the time that the complaint was filed. In fact, the court said, claim one of the patent appears to have two steps, then continuing. Defendant's website suggested it performed at least the first step. It was reasonable for plaintiff to conclude that discovery might uncover evidence that defendant either directed, controlled, or induced the performance of the other step. The presence of one ill-conceived claim might not, couldn't foreclose the good faith basis for this suit as brought. Counsel referred to the pre-suit settlement offer. As the district court explained, the record simply did not support Quintron's allegation that Commonwealth was simply trying to extort a quick nuisance value settlement. Quintron's own briefing is indicative of that. It, on the one hand, refers to the offer pre-suit as too expansive, as going beyond the patent, and then later in the briefing refers to it as a nuisance value settlement. It's both too much and too little. There's nothing improper about serving a letter on a party before serving a lawsuit. The ABA has said it's proper to remind the opposing party of the ordinary costs of proceeding to trial and to suggest that it may be in the opposing party's interest to avoid these costs by agreeing to a settlement. Of the five cases ever filed by Commonwealth, there is this one. One resulted in a settlement, and the other three were voluntarily dismissed. Hardly the pattern of a litigant who is bent on extorting nuisance value settlements through a campaign of litigation. Commonwealth was a small, family-owned and operated Boston laboratory and has no litigation history, either before or after. Quintron makes the allegation that the settlement offer went too far beyond the patent's terms, and yet that statement is simply not accurate. When the offer was made to license the products, product in the agreement is defined as breath-testing kits and breath-testing services used to detect SIBO and SIBO-related conditions. Now, this language is not included in Quintron's quote, but it is in the agreement, the proposed agreement. As described in the patent rights, patent rights are defined as the patents and or patent applications existing on the effective date which are described on Schedule A, and Schedule A includes a copy of the 852 patent. The devices, the offer was made on the devices because they were part of Quintron's use of the patented method and it was a way to measure a potential settlement. In the agreement that Cedars-Sinai offered to Commonwealth, very similar terms were offered as an arm's-length business negotiation. Your Honors, if there are no further questions, I'll surrender my time. Does the record tell us how many other demand letters Commonwealth has sent? You mentioned five suits. I am not aware of that, Your Honor. I do not believe it's reflected in the record.  Now, to resolve the question of whether or not Judge Dyke has requested reviewing the confidentiality assertions, are these your requests as well or solely Mr. Johnson's counsel? If there's a need for collaboration, I encourage you to do so, just to provide a single document showing what still needs to be preserved as confidential in any opinion that's produced. Thank you, Your Honor. I believe it will need to be a collaborative effort. Okay. Thank you. All right. Do you have some rebuttal time? Yes, thank you, Your Honor, and I'll be brief. First of all, I appreciate the recognition for the first time here today that at least the contributory claim had no merit from the outset. It didn't. It didn't then and it didn't today. I think you make a good point, but the fact that one claim might have been frivolous doesn't compel the award of attorney's fees, does it? No, it's a totality of the circumstances analysis and it certainly adds into the mix of the totality of the circumstance, but it certainly does add into it in a strong way in this case. In particular, what's also reflective here is that that claim, we talked about what did and did not happen in the pre-filing investigation. The one thing that should have been clear from the pre-filing investigation was that these devices were in the prior art, was from the patent markings on the breath test kits and the identification on the patent suit of the accused devices, the quintron gas chromatographs, and from Commonwealth's own possession. These things should have been. I don't think there's any question that it was known that this was in the prior art and it looks as though this one claim was frivolous, the contributory infringement claim, but that doesn't get you home, I think. Yeah, in addition to that, the direct infringement claims shouldn't have been filed either because those claims required that somebody had to perform each of the steps of the method claims and that plus the inducement claims, which under any reading of Akamai, the case was not dependent on the inducement claims either. It was a totality of the circumstances analysis that the district court failed to conduct. And under the octane fitness case, under a mine run analysis, this case certainly stands apart for a variety of reasons and should have been held as an exceptional case. Thank you. Okay, thank you. Thank you, counsel. That concludes the argument cases for this morning. The honorable court is adjourned for the day today.